```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
PIVOTAL PAYMENTS, INC.
```

       Plaintiff,          **ORDER**

     -against-            CV 14-4910 (GRB)

```
ANDREW PHILLIPS, CARDFLEX, INC,
and U.S. ALLIANCE GROUP, INC.,
```

        Defendants.
----------------------------------------------------------------X

**GARY R. BROWN, United States Magistrate Judge:**

  Before the Court is a motion by plaintiff Pivotal Payments, Inc. ("Pivotal") seeking a preliminary injunction enjoining Defendant U.S. Alliance Group, Inc. ("USAG") from paying to Defendant CardFlex, Inc. ("CardFlex") credit card residual payments and ordering USAG to deposit those funds into the Court. For the reasons set forth herein, that motion is DENIED.

## PROCEDURAL HISTORY

  On August 18, 2014, plaintiff filed this action, seeking damages arising from alleged "fraudulent inducements to enter certain asset purchase agreements and/or breach of those agreements and USAG's conversion of funds due to Pivotal." Complaint, DE [1], ¶ 1. Plaintiff further seeks "to rescind and/or reform those agreements on the basis of fraud and mutual or unilateral mistake and for preliminary relief." *Id.* On September 9, 2014, Pivotal moved for a temporary restraining order and/or a preliminary injunction directing USAG to deposit credit card residual payments with the Court, and moved for expedited discovery. DE [13], [21]. Those motions, made before the Honorable Joanna Seybert, were referred to the undersigned for report and recommendation. DE [29]. On September 18, 2014, the parties consented to the jurisdiction of the undersigned for all purposes. DE [48].

After a hearing, full briefing by the parties and provision for some expedited discovery, the Court denied the motion for a temporary restraining order in the following electronic Order:

> While plaintiff has demonstrated certain financial concerns relating to Cardflex, one of the defendants here, that showing does not meet the exacting standard required for a TRO retraining assets to await a potential judgment. Under the federal framework, a TRO is an extraordinary remedy never awarded as of right. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). In the context of a preliminary injunction, the Second Circuit has held that such relief is appropriate only upon showing "that the defendant intended to frustrate any judgment on the merits by transferring its assets out of the jurisdiction." *Feit & Drexler, Inc. v. Green*, 760 F.2d 406, 416 (2d Cir. 1985); *Gelfand v. Stone,* 727 F. Supp. 98, 100 (S.D.N.Y. 1989) ("A preliminary injunction may issue to preserve assets as security for a potential monetary judgment where the evidence shows that a party intends to frustrate any judgment on the merits by making it uncollectible"). Plaintiff has not made such a showing at this phase.

Electronic Order dated 9/19/2014. The parties subsequently completed briefing and submissions in connection with the motion for a preliminary injunction. This opinion follows.

## FACTS

*The Complaint*

According to the Complaint, Pivotal, CardFlex and USAG are all "independent sales organizations" ("ISOs") involved in processing credit and debit card transactions for merchants who pay fees, some of which are payable to the ISOs. Complaint, ¶¶ 12-13. These fees are sometimes known as "residuals." *Id*. at ¶ 13. In 2008, CardFlex acquired rights to use a Bank Identification Number ("BIN") assigned by Visa and MasterCard, which facilitates the ISO's handling of transactions. *Id*. at ¶ 15. In 2010, First Data Merchant Services Corporation ("FDMS"), the payment card processor for the BIN, informed CardFlex that Wells Fargo Bank, N.A. ("WFB"), the financial institution sponsoring the BIN, would not continue sponsoring CardFlex for certain policy violations. *Id*. at ¶ 16. USAG acquired Cardflex's rights to the BIN in 2011, and began processing the transactions. *Id*. at ¶ 18. Pursuant to a side agreement,

however, USAG agreed to pay the residuals from the BIN to Cardflex, and Cardflex retained the right to reassign the rights to the BIN. *Id*. at ¶ 19.

In 2013, Cardflex and Pivotal entered a Letter of Intent by which Pivotal offered to purchase the rights to the BIN. *Id*. at ¶ 21. Following due diligence, Pivotal and Cardflex entered into an Asset Purchase Agreement ("APA"), through which Pivotal acquired the rights to the BIN and the payment of residuals from USAG in exchange for a payment of approximately $3.1 million. *Id*. at ¶¶ 25-26. The APA provided for a "Stage Two" closing, which did not occur, which left Pivotal the right to continue to receive residual payments until it had received $3.1 million in "net residual payments." *Id*. at ¶¶ 26, 47.

The Complaint further alleges that Cardflex failed to disclose in due diligence "certain fees that USAG charged." *Id*. at ¶ 30. The parties also entered a second agreement, called the Assignment of BIN Transfer Agreement (the "ABTA"), which provided that USAG would not change its fees or charges or impose additional fees upon the merchant accounts associated with the BIN. *Id*. at ¶ 34. It is alleged that the ABTA further provided that if no "Stage Two" closing occurred under the APA "then USAG was to continue paying residuals to Pivotal until Pivotal 'has received Residuals in the aggregate amount of $3,100,000. . . .'" *Id*. at ¶ 36. The Complaint concludes that "As of August 18, 2014, Pivotal has received $1,249,793.00 in net residual payments. Pivotal is owed $1,836,152 in net residual payments." *Id*. at ¶ 48.

The Complaint sets forth several causes of action, including breach of contract, mutual mistake, unilateral mistake, conversion, fraudulent inducement and fraud.

*Additional Facts Pertinent to this Motion*

The parties have submitted a raft of additional filings, including numerous declarations, financial records produced as part of the expedited discovery, relevant agreements and materials

related to ancillary litigation. Based on these filings, it appears that the parties agree that Pivotal has received just over $3 million in *gross* residuals, a figure very close to the approximate $3.1 million purchase price. Second Moffett Decl., DE [53] at ¶ 8.[1] The fundamental dispute arises because, from that $3 million, Pivotal has incurred about $1.7 million in fees and commissions. *Id.* at ¶ 9. Thus, the critical issue is whether the subject agreements provided that Pivotal receive $3.1 million in *gross* or *net* residuals. Pivotal maintains that it "had to receive the equivalent of the purchase price . . . in net residuals." Fernandes Decl., DE [16] at ¶ 53. CardFlex and Phillips, for their part, contend that payout in net residuals "was not something that CardFlex agreed to, *nor would it have."* Phillips Decl, DE [50-1] at ¶ 17.

The language of the relevant agreements is distinctly unhelpful on this issue. The APA defines "residuals" as follows:

> "Residuals" means (a) all rights to compensation and any other amounts received pursuant to the FDMS Agreement attributable to or payable in respect of the Merchant Agreements including, but not limited to discount fees, in each case net of any expenses charged by FDMS under the FDMS Agreement attributable to or charged in respect of the Merchant Agreements, (b) amounts paid or fees charged by Authorize.net Merchant Partners and Network Merchants Inc. in each case attributable to or payable in respect of the Merchants, (c) amounts collected from Merchants for their use of the gateway operated by Verifi Inc. that matches any fees charged by FDMS labeled ACH Flags attributable to or payable in respect of the Merchants and, (d) any other amounts paid or payable to USAG and/or the Selling Parties attributable to or payable in respect of the Merchant Agreements.

DE [50-2] at 9. This definition appears to describe, for these purposes, gross residuals. Other sections of the ABTA cited by plaintiff do not clarify the issue. *See, e.g.*, ABTA, DE [20-2, § 3] ("Residuals shall continue to be paid to the Purchaser until Purchaser has received Residuals in the aggregate amount of $3,100,000").

A second issue arises from the alleged failure to disclose fees. When purchasing the right

---

[1] The actual delta between the figure by Pivotal to acquire the BIN ($3,085,945) and the amount received in gross residuals ($3,031,910) is approximately $50,000.

to the BIN residuals, Pivotal valued that income stream at 32 times the monthly net recurring revenue.  DE [53] at ¶ 7.  Pivotal claims that CardFlex failed to disclose and/or understated certain fees, leading Pivotal to overvalue the assets by approximately $600,000.  *Id*. at ¶¶ 4-7.  CardFlex submits evidence, in the form of an affidavit from Phillips and certain supporting documents, disputing that the fees were not accurately disclosed.  Phillips Decl., DE [50-1], ¶ 25.

**DISCUSSION**

**The Standard of Review**

A party seeking preliminary injunctive relief must demonstrate

> '(1) irreparable harm absent injunctive relief; (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor; and (3) that the public's interest weighs in favor of granting an injunction.'

*Red Earth LLC v. United States*, 657 F.3d 138, 143 (2d Cir. 2011).  The Court has "wide discretion in determining whether to grant a preliminary injunction," as it is "one of the most drastic tools in the arsenal of judicial remedies."  *Grand River Enter. Six Nations, Ltd. v. Pryor,* 481 F.3d 60, 66 (2d Cir. 2007) (citations omitted).

**Irreparable Harm**

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."  *Faiveley Transp. Malmo AB v. Wabtec Corp*., 559 F.3d 110, 118 (2d Cir. 2009) (citation omitted).  Generally, such relief is unavailable where, as here, plaintiff is seeking monetary damages.  As the Second Circuit has held, "the alleged injury must be one incapable of being fully remedied by monetary damages."  *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990); *cf. Gen. Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.,* 862 F. Supp. 1070, 1075 (S.D.N.Y. 1994) ("If the injury complained of may be compensated by an award of monetary damages, then an adequate remedy at law exists

5

and no irreparable harm may be found as a matter of law").

As previously noted in connection with the denial of a temporary restraining order, the Second Circuit has held that a preliminary injunction is appropriate only upon showing "that the defendant intended to frustrate any judgment on the merits by transferring its assets out of the jurisdiction." *Feit & Drexler, Inc. v. Green*, 760 F.2d 406, 416 (2d Cir. 1985); *see Gelfand v. Stone,* 727 F. Supp. 98, 100 (S.D.N.Y. 1989) (A preliminary injunction may issue to preserve assets as security for a potential monetary judgment where the evidence shows that a party intends to frustrate any judgment on the merits by making it uncollectible"). On this motion, plaintiff argues that the factual scenario discussed in *Feit* -- to wit: where a defendant is attempting to frustrate a judgment through the transfer of assets -- is not the exclusive means of obtaining preliminary relief to secure assets to satisfy a potential judgment. Rather, plaintiff argues, the Circuit's decision in *Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) and related caselaw suggests that a party can obtain such relief where a defendant is on the brink of insolvency. And that appears to be correct.

In *Brenntag*, the Circuit held that:

> As a general matter, because monetary injury can be estimated and compensated, the likelihood of such injury usually does not constitute irreparable harm. However, a perhaps more accurate description of the circumstances that constitute irreparable harm is that where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied. For this reason, courts have excepted from the general rule regarding monetary injury situations involving obligations owed by insolvents.

*Brenntag,* 175 F.3d at 249–50. Other courts have extended this exception to cases of "threatened insolvency." *Federated Strategic Income Fund v. Mechala Grp. Jamaica Ltd.,* No. 99 CIV 10517 HB, 1999 WL 993648, at *8 (S.D.N.Y. Nov. 2, 1999). However, to obtain injunctive

relief under the *Brenntag* exception, "a movant must show that the risk of insolvency is likely and imminent." *CRP/Extell Parcel I, L.P. v. Cuomo,* 394 F. App'x 779, 782 (2d Cir. 2010).

In this instance, CardFlex is not insolvent, and maintains that it remains "an ongoing viable business." DE [50] at 23. While the parties vigorously dispute the import of financial statements relating to CardFlex, plaintiff has failed to demonstrate that any "risk of insolvency is likely and imminent." *CRP/Extell Parcel,* 394 F. App'x at 782. Equally important, there has been no showing that CardFlex's codefendants -- Phillips and USAG -- face any threat of financial difficulties.[2] Thus, plaintiff has failed to meet its burden to establish irreparable harm.

**Likelihood of Success**

Even assuming, *arguendo,* that plaintiff could demonstrate a threat of irreparable harm, plaintiff has also failed to demonstrate a likelihood of success on the merits.[3] On the central claim of gross versus net residuals, the evidence submitted by the parties is, at best, ambiguous. Plaintiff maintains there is proof of mutual or unilateral mistake, while defendants' vehemently deny the same in sworn statements. The record, at this juncture, is sufficiently equivocal on many on these key issues such that the issue of likelihood remains unclear. At the same time, plaintiff has, unquestionably, demonstrated "sufficiently serious questions going to the merits to make them a fair ground for litigation." *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). However, because this is

---

[2] This is not a situation, like that in *Brenntag* in which plaintiff's claims against one defendant are necessarily stronger than those against another. *See Brenntag*, 175 F.3d at 250 ("Although we recognize the danger in finding irreparable harm where alternative, solvent defendants are available, Brenntag's claims against an admittedly non-delivering seller are far simpler and much stronger than potential claims against the issuer and holder of a letter of credit").

[3] Where plaintiff is seeking a "mandatory injunction [which] is said to alter the status quo by commanding some positive act," courts sometimes apply a "heightened standard" in evaluating such requests for relief. *Tom Doherty Associates, Inc. v. Saban Entm't, Inc*., 60 F.3d 27, 34 (2d Cir. 1995). But as the Second Circuit has observed, this distinction "is not without ambiguities or critics," and is particular problematic where, as here, a breach of contract is at issue. *Id.* ("plaintiff's view of the status quo is the situation that would prevail if its version of the contract were performed [while] defendant's view of the status quo is its continued failure to perform as the plaintiff desires").

exclusively an issue of securing monetary damages to withstand a judgment, based upon the analysis set forth above, including the seemingly uncontested availability of other defendants without financial difficulties, plaintiff has failed to demonstrate that the balance of the hardships tips decidedly in its direction.

CONCLUSION

Based on the foregoing, plaintiff's motion for a preliminary injunction is DENIED.

SO ORDERED.

Dated: Central Islip, New York
November 25, 2014

/s/ Gary R. Brown
GARY R. BROWN
United States Magistrate Judge

---

Thus, though the relief sought here could fairly be described as a mandatory injunction, I have not applied a heightened standard in reviewing this motion.