UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
PIVOTAL PAYMENTS, INC.

Plaintiff,

**MEMORANDUM & ORDER**

-against-

CV 14-4910 (GRB)

ANDREW PHILLIPS, CARDFLEX, INC, and U.S. ALLIANCE GROUP, INC.,

Defendants.
---------------------------------------------------------------X

**GARY R. BROWN, United States Magistrate Judge:**

Presently before the Court are motions to compel the production of 36 communications between plaintiff and the attorneys who represented plaintiff in the business transactions underlying the instant dispute, as identified on plaintiff's privilege log. Following an *in camera* review of the subject materials, and for the reasons set forth herein, the motion to compel is denied.

In sum and substance, defendants seek production of attorney-client communications that might bear on plaintiff's claim of unilateral mistake, contending that by raising this claim, plaintiff has put communications with its deal counsel at issue, thereby waiving or forfeiting any privilege that would otherwise attach to these communications. For its part, plaintiff contends that because it is not intending to rely upon attorney-client communications to establish its claim of unilateral mistake, raising the claim does not waive the attorney-client privilege. For the reasons set forth herein, plaintiff's filing of a claim of unilateral mistake does not give rise to a waiver or forfeiture of attorney-client privilege, even though one of the 36 sought communications might be relevant to plaintiff's claim.

**Background**

This matter previously came before the undersigned on a motion for a preliminary injunction, which was denied in an Order that describes the allegations of the complaint, as well as a motion to dismiss, also the subject of a written order. *See Pivotal Payments, Inc. v. Phillips*, No. CV 14-4910 (GRB), 2014 WL 6674621 (E.D.N.Y. Nov. 25, 2014) (the "PI Order"); DE 65 (the "Motion to Dismiss Order"). Familiarity with both orders is assumed.

The complaint raises a number of claims arising from a complex business transaction, summarized in the PI Order as follows:

> Pivotal, CardFlex and USAG are all "independent sales organizations" ("ISOs") involved in processing credit and debit card transactions for merchants who pay fees, some of which are payable to the ISOs. These fees are sometimes known as "residuals." In 2008, CardFlex acquired rights to use a Bank Identification Number ("BIN") assigned by Visa and MasterCard, which facilitates the ISO's handling of transactions. . . . USAG acquired Cardflex's rights to the BIN in 2011, and began processing the transactions. Pursuant to a side agreement, however, USAG agreed to pay the residuals from the BIN to Cardflex, and Cardflex retained the right to reassign the rights to the BIN.
>
> In 2013, Cardflex and Pivotal entered a Letter of Intent by which Pivotal offered to purchase the rights to the BIN. Following due diligence, Pivotal and Cardflex entered into an Asset Purchase Agreement ("APA"), through which Pivotal acquired the rights to the BIN and the payment of residuals from USAG in exchange for a payment of approximately $3.1 million. The APA provided for a "Stage Two" closing, which did not occur, which left Pivotal the right to continue to receive residual payments until it had received $3.1 million in "net residual payments."
>
> [Allegedly], Cardflex failed to disclose in due diligence "certain fees that USAG charged." The parties also entered a second agreement, called the Assignment of BIN Transfer Agreement (the "ABTA"), which provided that USAG would not change its fees or charges or impose additional fees upon the merchant accounts associated with the BIN. [T]he ABTA further provided that if no "Stage Two" closing occurred under the APA "then USAG was to

> continue paying residuals to Pivotal until Pivotal 'has received Residuals in the aggregate amount of $3,100,000....'"
>
> [I]t appears that the parties agree that Pivotal has received just over $3 million in gross residuals, a figure very close to the approximate $3.1 million purchase price. The fundamental dispute arises because, from that $3 million, Pivotal has incurred about $1.7 million in fees and commissions. Thus, the critical issue is whether the subject agreements provided that Pivotal receive $3.1 million in gross or net residuals. Pivotal maintains that it "had to receive the equivalent of the purchase price ... in net residuals." CardFlex and Phillips, for their part, contend that payout in net residuals "was not something that CardFlex agreed to, nor would it have."
>
> The language of the relevant agreements is distinctly unhelpful on this issue. The APA defines "residuals" as follows:
>
>> "Residuals" means (a) all rights to compensation and any other amounts received pursuant to the FDMS Agreement attributable to or payable in respect of the Merchant Agreements including, but not limited to discount fees, in each case net of any expenses charged by FDMS under the FDMS Agreement attributable to or charged in respect of the Merchant Agreements, (b) amounts paid or fees charged byAuthorize.net Merchant Partners and Network Merchants Inc. in each case attributable to or payable in respect of the Merchants, (c) amounts collected from Merchants for their use of the gateway operated by Verifi Inc. that matches any fees charged by FDMS labeled ACH Flags attributable to or payable in respect of the Merchants and, (d) any other amounts paid or payable to USAG and/or the Selling Parties attributable to or payable in respect of the Merchant Agreements.
>
> This definition appears to describe, for these purposes, gross residuals. Other sections of the ABTA cited by plaintiff do not clarify the issue. ("Residuals shall continue to be paid to the Purchaser until Purchaser has received Residuals in the aggregate amount of $3,100,000").

PI Order at *1–3 (citations omitted). Among plaintiff's primary claims are several for unilateral

mistake, further refined in the Amended Complaint as follows: "Although Pivotal understood that repayment of the purchase price ($3,085,945.00) would be calculated based upon net residual payments, because the basic assumption was that CardFlex would return the purchase price, the APA does not accurately state this understanding." Amended Complaint, DE 58, ¶139.

On this motion, defendants seek the compulsion of three dozen communications between plaintiff and counsel which have been identified on a privilege log. *See* DE 87. Based upon the information provided on the privilege log, it is difficult to say with any certainty whether the withheld communications would be relevant herein, and the connection to some appears highly tenuous (such as several emails entitled only "do we have a call?") In fairness to defendants, however, the party seeking discovery is at a distinct disadvantage in attempting to identify improperly withheld information. *See* Local Civil Rule 26.3(b) ("Discovery requests shall be read reasonably in the recognition that the attorney serving them generally does not have the information being sought and the attorney receiving them generally does have such information or can obtain it from the client").

As such, following review of the motion papers, the undersigned directed production of the subject communications for *in camera* review. *See* Electronic Order dated July 26, 2016. Based upon the *in camera* review and the undersigned's familiarity with this matter, there is only one exchange that appears relevant to this action, specifically, the email thread designated as page CTRL_E_0009388. However, for the reasons discussed herein, the Court is not directing the production of that communication.

**Discussion**

***The Attorney-Client Privilege***

Although federal law does not provide the applicable framework because this case is

based upon diversity jurisdiction, and for purposes of this motion the legal standard governing the application and waiver of the attorney-client privilege is governed by state law, it may be a helpful backdrop to examine federal standards as federal and state law do not differ meaningfully. *See Employers Ins. Co. of Wausau v. Skinner,* No. CV 07-735 (JS)(AKT),

As the Supreme Court has held:

> Federal Rule of Evidence 501 provides that "the privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client. The lawyer–client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out. And we [have] recognized the purpose of the privilege to be to encourage clients to make full disclosure to their attorneys. This rationale for the privilege has long been recognized by the Court.

*Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S. Ct. 677, 682, 66 L. Ed. 2d 584 (1981) (citations and alterations omitted).

Because of the considerations described in *Upjohn*, "'rules which result in the waiver of this privilege and thus possess the potential to weaken attorney-client trust' have been formulated with caution." *Gardner v. Major Auto. Companies, Inc.*, 2014 WL 1330961 at *3 (E.D.N.Y. 2014), (*quoting In re County of Erie*, 546 F.3d 222, 228 (2d Cir. 2008)). At the same time, "since the privilege stands in derogation of the public's right to every man's evidence, . . . it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." *In re Grand Jury Proceedings*, 219 F.3d 175, 182–83 (2d Cir. 2000).

***Implied Waiver of the Attorney-Client Privilege Under Federal Law***

The Second Circuit has "recognized that implied waiver may be found where the privilege holder asserts a claim that *in fairness* requires examination of protected communications." *Id.* As the Second Circuit has observed:

> Generally, "[c]ourts have found waiver by implication when a client testifies concerning portions of the attorney-client communication, ... when a client places the attorney-client relationship directly at issue, ... and when a client asserts reliance on an attorney's advice as an element of a claim or defense...."

*In re County of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) (*quoting Sedco Int'l S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982)). Most often, implied waivers derive from partial disclosures, rooted in the sword-and-shield principle. *See, e.g., United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).

Here, however, there has been no partial disclosure, so this case does not fall into the first category. It would be difficult to conclude that the filing of a unilateral mistake claim, "places the attorney-client relationship directly at issue" as this category generally encompasses matters directly arising from the subject representation, such as a legal malpractice action or an advice of counsel defense.[1] *See, e.g. Leviton Mfg. Co., Inc. v. Greenberg Traurig LLP*, No. 09 Civ. 8083(GBD)(THK), 2010 WL 4983183, at *4 (S.D.N.Y. Dec. 6, 2010) ("For example, where a claim of malpractice is premised upon reliance on the erroneous advice of predecessor counsel, under . . . federal law, the legal advice received from any other counsel on the same issue is placed at issue."). Furthermore, the cause of action for unilateral mistake does not expressly include such reliance as an element.[2] Regarding the third category, plaintiff has made it clear

[1] Neither the filings of the parties nor this Court's independent research, has revealed any authority suggesting that a claim of unilateral mistake "places the attorney-client relationship directly at issue."

2 To succeed on this claim, plaintiff "must establish that (i) he entered into a contract under a mistake of material fact, and that (ii) the other contracting party either knew or should have known that such mistake was being made."

that it will not rely on communications with its counsel to in any way establish its unilateral mistake claim. Thus, the situation presented here does not fit squarely within any of the three general categories of implied waiver.

Cases governing implied waiver of the attorney-client privilege, sometimes referred to as a "forfeiture" of privilege, prove murky and, oftimes, inconsistent. The legal landscape is littered with general principles, yet guidance as to their application can be elusive. *See John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003), *as amended* (Nov. 25, 2003) ("While we have sometimes used broad language in describing the doctrine, such as generalizing about the incompatibility of using the assertions as a 'sword' while using privileges attaching to related matter as a 'shield,' because the doctrine is rooted in fairness we have also cautioned against broad generalizations, stressing that '[w]hether fairness requires disclosure . . . is best decided on a case by case basis, and depends primarily on the specific context in which the privilege is asserted'"). As Judge Ross recently observed:

> The "at issue" waiver is narrow but ill-defined. Its animating principle is fairness and, more precisely, "the type of unfairness to the adversary that results in litigation circumstances when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." *In re Cty. of Erie*, 546 F.3d at 229 (*quoting John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003), *as amended (*Nov. 25, 2003)). However, many courts have conflated this form of waiver with reliance on counsel or have denied its application without explaining its contours.

*Martin v. Giordano*, No. 11-CV-4507 (ARR), 2016 WL 2354239, at *3 (E.D.N.Y. May 4, 2016). Indeed, Judge Ross suggests that *County of Erie* may have failed to rectify the case law disparities identified in that opinion, noting that the opinion's "discussion vacillates between

---

*Creative Waste Mgmt., Inc. v. Capitol Envtl. Servs., Inc.*, 429 F. Supp. 2d 582, 599 (S.D.N.Y.), *supplemented,* 458 F. Supp. 2d 178 (S.D.N.Y. 2006). Though irrelevant for present purposes, it is worth noting that "New York law does not permit reformation or rescission of a contract for unilateral mistake alone. A unilateral mistake must be

these two forms of waiver [*i.e.* the "at issue" waiver and the "reliance" waiver] and seems at certain points to conflate them." *Martin*, 2016 WL 2354239 at *3.

For a time, courts in this Circuit and elsewhere relied on the opinion in *Hearn v. Rhay*, 68 F.R.D. 574, 579 (E.D. Wash. 1975), a civil rights action arising under 42 U.S.C. § 1983 challenging a strip search policy implemented by state prison officials. In holding that defendants implicitly waived attorney-client privilege applicable to legal advice received from the state attorney general, the court felt "compelled to recognize a new and narrowly limited exception to the attorney-client privilege, which applies to civil rights suits against state officials under 42 U.S.C. § 1983, wherein the defendant asserts the affirmative defense of good faith immunity." *Id.* at 580. *Hearn* crafted the following test for applying this exception:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. Thus, where these three conditions exist, a court should find that the party asserting a privilege has impliedly waived it through his own affirmative conduct.

*Id*. at 581.

However, as the Second Circuit observed, "Courts in our Circuit and others have criticized *Hearn* and have applied its tests unevenly." *In re County of Erie*, 546 F.3d 222, 227 (2d Cir. 2008). Thus, in that case, though confronted with similar facts, the Second Circuit rejected the application of *Hearn* by the district court, noting:

> Although we have cited *Hearn* in the past in support of some general propositions, we never have decided whether the entirety of the test put forward in that case and relied upon by the District Court was definitive. . . . We agree with its critics that the *Hearn* test cuts too broadly and therefore conclude that the District Court

---

'coupled with some fraud.'" *Creative Waste Mgmt., Inc. v. Capitol Envtl. Servs., Inc*., 429 F. Supp. 2d at 607.

> erred in applying it here. According to *Hearn*, an assertion of privilege by one who pleads a claim or affirmative defense "put[s] the protected information at issue by making it relevant to the case." *Hearn*, 68 F.R.D. at 581. But privileged information may be in some sense relevant in any lawsuit. A mere indication of a claim or defense certainly is insufficient to place legal advice at issue. The *Hearn* test presumes that the information is relevant and should be disclosed and would open a great number of privileged communications to claims of at-issue waiver. *Nowhere in the Hearn test is found the essential element of reliance on privileged advice in the assertion of the claim or defense in order to effect a waiver.*

*In re County of Erie,* 546 F.3d at 229 (emphasis added). And, in a holding with particular application to the instant case, the Circuit ruled that "a party must *rely* on privileged advice from his counsel to make his claim or defense." *Id*.

At the same time, the holding in *County of Erie* also rests on the following:

> Petitioners do not claim a good faith or state of mind defense. They maintain only that their actions were lawful or that any rights violated were not clearly established. In view of the litigation circumstances, any legal advice rendered by the County Attorney's Office is irrelevant to any defense so far raised by Petitioners.

546 F.3d at 229-30 (holding that "[r]espondents shall have leave to reargue forfeiture of the privilege before the District Court should the Petitioners rely upon an advice-of-counsel or good-faith defense at trial"). In some sense, this leaves open the question of whether the at-issue exception to the attorney-client privilege applies to cases such as the instant dispute, which involve the issue of state of mind.

However, as Judge Ross correctly observed, *County of Erie*:

> firmly rejected a broad definition of the at issue exception—one that would vitiate privilege whenever the holder puts the protected information at issue by making it relevant. 546 F.3d at 228-30. That court instead adopted a more narrow definition, concluding that the holder waives privilege when he or she attempts to influence the decisionmaker on the merits of some claim or

> defense by reference to the allegedly privileged information. *Id.*; *see also Granite Partners v. Bear, Stearns & Co.*, 184 F.R.D. 49, 55 (S.D.N.Y. 1999) ("Waiver typically occurs when the party asserting the privilege placed a protected document in issue through some affirmative act intended to insure [sic] to that party's benefit or where the party makes selective use of the privileged materials.").

*Martin*, 2016 WL 2354239, at *3. In *Martin,* Judge Ross concluded:

> "Whether fairness requires disclosure has been decided by the courts on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." *In re Grand Jury Proceedings*, 219 F.3d 175, 183 (2d Cir. 2000). In this case, the privilege is asserted in the context of arguments about the circumstances preceding plaintiff's voluntary dismissal of his claims. Defendants argue that they should be able to explore why plaintiff voluntarily dismissed his claims, whereas plaintiff argues that they should not. Specifically, plaintiff argues that defendants have offered nothing more than speculation about the impetus for plaintiff's voluntary dismissal and that such speculation neither warrants a hearing nor vitiates privilege.
>
> In this context, the court does not find that fairness requires disclosure. Plaintiff has not injected the privileged communications into this dispute through some affirmative act with the aim of benefiting himself. Nor has plaintiff selectively used the privileged materials. Instead, plaintiff has simply responded to the pending motion for sanctions and attorney's fees. In doing so, plaintiff has advanced multiple arguments for why an evidentiary hearing is unnecessary. These arguments include his claim that a large part of the evidence defendants seek to elicit at that hearing is subject to attorney-client privilege. It is fair to say that plaintiff uses attorney-client privilege as a shield, but he does not use it as a sword.

*Id.* at *4. Applying that logic to this case, it would appear that plaintiff's assertion of a unilateral mistake claim – though such claim clearly implicates plaintiff's state of mind and arguably rendering discussions with counsel relevant – does not waive the attorney-client privilege. Like the plaintiff in *Martin,* whose rationale for voluntary dismissal was relevant (and could well have been explored through the disclosure of attorney client materials), the plaintiff

has claimed mistake but has not injected attorney-client material into the case, or attempted to influence the Court with attorney-client material. Moreover, neither the allegations in the complaint, nor the express elements of unilateral mistake contain any reference to reliance upon advice of counsel.

***State Law Regarding Implied Waiver***

Unlike decisions in federal question cases, "in a diversity case, the issue of privilege is to be governed by the substantive law of the forum state," which, in this case, is New York. *Dixon v. 80 Pine St. Corp.,* 516 F.2d 1278, 1280 (2d Cir. 1975). Because this is a diversity action, to the extent that New York law concerning the scope of the attorney-client privilege diverges from federal law – and this may well not be the case here – New York law applies. However, an examination of state law is warranted.

Defendants rely upon the decision in *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC,* 2012 WL 2568972, at *6 (S.D.N.Y. 2012) to support its contention that Pivotal's assertion of unilateral mistake, standing alone, gives rise to a forfeiture of privilege. And, indeed, *MBIA* appears to support defendant's argument, finding a waiver of privilege where plaintiff "introduce[d] various affidavits reflecting its witnesses' intent and interpretation of the Master Agreement and Indenture," and rejecting the plaintiff's argument that an "'at issue' waiver occurs only when a party 'has asserted a claim or defense that he intends to prove by use of the privileged materials.'" *Id.* at *7.

In this regard, it appears that *MBIA* may be predicated upon a misreading of important New York state precedent. The *MBIA* decision largely turns upon the following analysis of *Deutsche Bank Trust Co. of Am. v. Tri–Links Investment Trust,* 43 A.D.3d 56, 63, 837 N.Y.S.2d 15 (1st Dep't 2007):

> MBIA, in rejecting Patriarch's argument that MBIA has placed counsel's opinion “at issue,” has cited the case of [*Deutsche Bank*] and contended in its opposition brief that “ ‘at issue’ waiver occurs only when a party ‘has asserted a claim or defense that he intends to prove by use of the privileged materials.’
>
> However, notwithstanding MBIA's contentions, the First Department in *Deutsche Bank* held that “‘[a]t issue’ waiver of privilege occurs where a party affirmatively places the subject matter of its own privileged communication at issue in litigation, so that invasion of the privilege is required to determine the validity of a claim or defense of the party asserting the privilege, and application of the privilege would deprive the adversary of vital information.” *Deutsche Bank*, 43 A.D.3d at 63. The First Department held only that the privilege-holder had not waived its attorney-client privilege merely by asserting a claim against its insurer for indemnification, and the privilege-holder had not made any factual assertions that placed its state of mind at issue or otherwise implicated advice of counsel. *Id.* at 64–65.
> The First Department's statement in Deutsche Bank that “at issue waiver occurs when the party has asserted a claim or defense that he intends to prove by use of the privileged materials,” *id*. at 64 (quotations omitted), did not purport to identify the exclusive basis for “at issue” waiver under New York law. As described above, the First Department's description of the “at issue” waiver was broader.

*MBIA Ins. Corp.*, 2012 WL 2568972, at *6. However, the *Deutsche Bank* decision appears to support the arguments rejected in the *MBIA* decision:

> Of course, that a privileged communication contains information relevant to issues the parties are litigating does not, without more, place the contents of the privileged communication itself “at issue” in the lawsuit; if that were the case, a privilege would have little effect. Rather, “at issue” waiver occurs when the party has asserted a claim or defense that he intends to prove by use of the privileged materials.

*Deutsche Bank*, 43 A.D.3d at 64, 837 N.Y.S.2d at 23 (citations and alterations omitted). Based on this reasoning, the Appellate Division held as follows:

> In this case, it is undisputed that Bankers Trust, by suing to obtain indemnification for the WMI action, has, at a minimum, placed at

> issue the reasonableness of the amounts it spent on the defense of that matter and of the amount it paid WMI in settlement. The need to determine the reasonableness of the amounts Bankers Trust spent to defend and settle the WMI action does not, however, place at issue the legal advice Bankers Trust received from its attorneys in that litigation, those attorneys' work product, or their private mental impressions, conclusions, opinions or legal theories. Bankers Trust has not premised its claims for contractual and common-law indemnity on the legal advice it received in the WMI action, nor has Bankers Trust made any self-serving, selective disclosure of any protected material. Further, Bankers Trust forthrightly states that it will not use privileged material or attorney work-product to establish the reasonableness of its defense and settlement of the WMI action. Instead, Bankers Trust states that it will rely on evidence from the 120 boxes of non-privileged documents it has already produced to Tri–Links in this action . . .

*Id.*, 43 A.D.3d at 64–65, 837 N.Y.S.2d at 24. In fairness, *Deutsche Bank* does observe that the question of reasonableness is "an objective standard," which does distinguish it somewhat from the instant case involving plaintiff's subjective state of mind. *Id.* Nevertheless, the decision suggests that, under New York law, the implicit waiver does not extend to situations in which a party has repudiated the use of protected materials to establish a claim. *Accord Ambac Assur. Corp. v. DLJ Mortgage Capital, Inc.*, 92 A.D.3d 451, 452, 939 N.Y.S.2d 333 (2012) ("Generally, no 'at issue' waiver is found where the party asserting the privilege does not need the privileged documents to sustain its cause of action").

Other courts interpreting New York law have reached similar conclusions. In reversing a trial court's directive to produce certain attorney-client communications as "an improvident exercise of discretion," the First Department, relying on *Deutsche Bank* held:

> "[T]hat a privileged communication contains information relevant to issues the parties are litigating does not, without more, place the contents of the privileged communication itself 'at issue' in the lawsuit" (*Deutsche Bank*, 43 AD3d at 64). Instead, "at issue" waiver occurs when a party has asserted a claim or defense that he or she intends to prove by use of the privileged material (*id*.). Accordingly, it was error for the JHO to find waiver on the basis of

relevance alone.

*Veras Inv. Partners, LLC v. Akin Gump Strauss Hauer & Feld LLP*, 52 A.D.3d 370, 374, 860 N.Y.S.2d 78 (2008). Significantly, *Veras*, a malpractice action, involved the potential disclosure of "any relevant advice plaintiffs received from their nonparty counsel bears on the issue of plaintiffs' reasonable reliance on defendant's advice regarding the legality of their trading practices." *Veras Inv. Partners, LLC v. Akin Gump Strauss Hauer & Feld LLP*, 52 A.D.3d 370, 373, 860 N.Y.S.2d 78 (2008). The parallels to the instant case, in which defendant seeks to discover attorney client communications which may bear on the reasonableness of plaintiff's alleged mistake, are obvious.

Construing New York law, another district court rejected a defendant's effort to obtain plaintiff's privileged communication where plaintiff did "not intend to rely on any privileged communications to prove its claims." *Nimkoff Rosenfeld & Schechter, LLP v. RKO Properties, Ltd.*, No. 07CIV7983DABHBP, 2016 WL 3042733, at *6 (S.D.N.Y. May 24, 2016). In reaching this determination, the court noted that under New York law, "relevance and utility does not itself implicate at issue waiver." *Id*. The court advised plaintiff that any subsequent effort to "introduce evidence that demonstrates reliance on advice of [counsel], RKO would be putting the subject matter of the communication with counsel at issue which would result in waiver of the privilege. *Id.*

Thus, the trend among courts interpreting New York privilege law supports the notion that where a plaintiff's claim does not require the introduction of privileged material, and the plaintiff disclaims any such effort, the attorney client privilege is not waived.

The notion that a plaintiff can maintain the privilege by committing to refrain from using privileged materials which might otherwise be relevant substantively or for the purposes of

impeachment may seem, at first blush, counterintuitive. *See, e.g. Leviton Mfg. Co. v. Greenberg Traurig LLP*, No. 09 CIV 8083 GBD THK, 2010 WL 4983183, at *5 (S.D.N.Y. Dec. 6, 2010), *objections overruled*, No. 09 CIV. 08083 GBDTHK, 2011 WL 2946380 (S.D.N.Y. July 14, 2011) (finding "some superficial appeal" to the argument that a defendant should not be forced to "take [plaintiff] at its word" in the face of privileged materials that might disprove plaintiff's contentions). Indeed, this reading of the law appears to give plaintiff the choice of whether to waive privilege when state of mind is at issue, suggesting that such waivers would be made tactically to the benefit of plaintiff (though, of course, there could well be other reasons that a party would opt to protect privileged material).

However, looking more broadly at privilege cases, the notion of providing a party this option is far from unprecedented. Indeed, in the area of psychotherapist-patient privilege, it is well established that a plaintiff can avoid forfeiting privilege by foregoing claims to emotional harm beyond "garden-variety" injury. In *In re Sims*, 534 F.3d 117, 129 (2d Cir. 2008), the Second Circuit faced "the novel and far-reaching question of whether a plaintiff's claim for injuries that include only the garden-variety emotional injury that would ordinarily result from a physical assault, constitutes a forfeiture of his psychotherapist-patient privilege." In considering this question, the Circuit quoted the holding of the Supreme Court in *Jaffee v. Redmond*, 518 U.S. 1, 116 S. Ct. 1923 (1996), which made clear that "if the purpose of the [psychotherapist-patient] privilege is to be served, the participants in the confidential conversation must be able to predict with some degree of certainty whether particular discussions will be protected." *Id*. at 18. *Sims* upheld the privilege in these circumstances, specifically rejecting the argument that "even a request for only garden-variety damages waives the psychotherapist-patient privilege 'because the psychiatric records *might conceivably disprove* the experiencing of the pain and suffering.'"

*Sims*, 534 F.3d at 134 (emphasis original). The alternative, the Circuit ruled, would mean that "the confidentiality of psychotherapist-patient communications would be uncertain—if not extinguished—in a great number of cases." *Id.*

***Considerations of Fairness and Use of Privileged Materials to Controvert Plaintiff's Claim***

According to the defendants, "the central point of this motion" is that "it would be unfair to allow [plaintiff] to use[] an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." DE 83 at 1 (quotations omitted). Based on this premise, defendants contend that "by placing 'at issue' its subjective intent and understanding of the contractual meaning, Pivotal has "forfeited" the privilege because (among other reasons) the truthfulness of its assertions can be assessed only by examining those communications." DE 80 at 1.

The question then arises whether, either as a general matter or within the specific contours of this case, the dictates of fairness require disclosure of plaintiff's privileged communications to permit defendants to attempt to substantively controvert plaintiff's claim of mistake or to impeach plaintiff's witnesses. In other words, does plaintiff's claim of mistake entitle defendants to breach the attorney-client privilege to search for evidence helpful to the defense?

Importantly, "[t]he Supreme Court has noted that '[p]arties may forfeit a privilege by exposing privileged evidence, but do not forfeit one merely by taking a position that the evidence might contradict.'" *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (*quoting United States v. Salerno,* 505 U.S. 317, 323 (1992)). In *John Doe Co. v. United States,* 350 F.3d 299, 302 (2d Cir. 2003), *as amended* (Nov. 25, 2003), upon which defendant relies, the Second Circuit, in finding that the privilege at issue had not been forfeited, held that:

> Forfeiture of this nature is justified by considerations of fairness to the adversary. In some circumstances, courts have ruled that it would be unfair for a party asserting contentions to an adjudicating authority to then rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contentions. While we have sometimes used broad language in describing the doctrine, such as generalizing about the incompatibility of using the assertions as a "sword" while using privileges attaching to related matter as a "shield," because the doctrine is rooted in fairness we have also cautioned against broad generalizations, stressing that "[w]hether fairness requires disclosure . . . is best decided on a case by case basis, and depends primarily on the specific context in which the privilege is asserted."

Based on these principles, it can be said with some confidence that defendants are not entitled to invade the privilege because the subject information may prove of value for the purposes of impeachment or contravention of plaintiff's claims. In other words, simply because the material in question might help defendants undermine plaintiff's claims does not entitle the defendants to examine the material for those purposes. *Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.) Inc.*, 111 F.R.D. 76, 81 (S.D.N.Y. 1986) ("To be sure, as in every lawsuit, it would be useful and convenient for SCB to obtain Ayala's privileged material, and the substance of its confidential communications with its attorneys might reveal some of what Ayala knew. But those are not reasons to void the attorney-client privilege").

Which brings us to the specific context of this case. One can posit a set of circumstances in which an attorney-client communication would run so far counter to the assertions made in a lawsuit that considerations of fairness would demand the production. This case, however, is very different. As noted above, of the 36 challenged communications, only one could potentially bear on the question of mistake and the level of understanding of one of plaintiff's principals. However, the email in question could in no way be characterized as conclusive and, based on the undersigned's familiarity with the case, would best be described as marginally relevant. As

such, in the specific context of this case, I find that considerations of fairness do not require disclosure.

**Conclusion**

Based on the foregoing, the motion to compel is denied.

**SO ORDERED**.

Dated: Central Islip, New York
September 29, 2016

 /s/ Gary R. Brown
GARY R. BROWN
United States Magistrate Judge